# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **MICHAEL HONIBALL,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>**THE CREDIT PROS INTERNATIONAL CORPORATION,** a New Jersey corporation,<br><br>*Defendant.* | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff Michael Honiball ("Honiball" or "Plaintiff") brings this Class Action Complaint and Demand for Jury Trial against Defendant The Credit Pros International Corporation. ("Credit Pros" or "Defendant") to stop Defendant from violating the Telephone Consumer Protection Act by making unsolicited, pre-recorded calls to consumers, and to otherwise obtain injunctive and monetary relief for all persons injured by Credit Pros' conduct. Plaintiff, for his Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## PARTIES

1. Plaintiff Honiball is a Hoboken, New Jersey resident.

2. Defendant Credit Pros is a New Jersey corporation headquartered in Newark, New Jersey. Credit Pros conducts business throughout this District and the United States.

## JURISDICTION AND VENUE

3. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4. This Court has personal jurisdiction over Defendant and venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant is based in this District and because the wrongful conduct giving rise to this case was directed to Plaintiff from, and received by Plaintiff in, this District.

## INTRODUCTION

5. As the Supreme Court explained at the end of its last term, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

6. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

7. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

8. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

9. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

10. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

11. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

12. According to online robocall tracking service "YouMail," 4.9 billion robocalls were placed in March 2021 alone, at a rate of 159.4 million per day. www.robocallindex.com (last visited April 26, 2021).

13. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

14. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

15. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf

3

**CREDIT PROS**

16. Credit Pros offers credit repair solutions to consumers that include credit monitoring and credit improvement.[3]

17. Credit Pros engages in telemarketing in order to advertise its credit repair solutions to consumers.

18. Credit Pros places pre-recorded calls or hires telemarketers to call on its behalf who identify as Credit Pros.

19. Credit Pros' pre-recorded calls are for the purpose of advertising Credit Pros' credit repair services.

20. Credit Pros places these pre-recorded sales calls to consumers' phone numbers without first obtaining their prior express written consent.

21. Credit Pros placed numerous unsolicited pre-recorded calls to Plaintiff's cell phone number.

22. There are numerous complaints posted online regarding unsolicited calls and text messages that consumers have received from The Credit Pros including:

- [4]

-  "Someone from ************ keeps texting me... Says they are from The CreditPros. They have sent 5 texts just today! I have never contacted them. If this is not their business, then they need to contact the number above and let them know to

---

[3] https://thecreditpros.com/
[4] https://www.yelp.com/biz/the-credit-pros-newark

4

stop texting people saying that they are The Credit Pros. It this is The Credit Pros, STOP HARASSING ME! NO STARS!"[5]

- 
- "They are spamming my phone with text messages NON STOP. I have never ever ever signed up for their service ever. They send obnoxious long text messages with a different sketchy number every time. When I call, I get a recorded message saying it's the Credit Pros, but any time I get connected with an actual human they pretend they can't hear me and hang up. What the heck? Makes no sense, just phishing for information is what it seems like. I would NEVER EVER use their services if you need credit repair. They are clearly predatory and will likely sell your information."[7]
- "Says to be "Credit Pros", credit report repair company. Kept calling all day, & texting also."[8]
- "Spoofing something local. It finally left a message, concerned about my credit."[9]

23. A consumer posted a pre-recorded message received from Defendant Credit Pros on Youmail.com. This recording is similar to the pre-recorded call that the Plaintiff received.

---

[5] https://www.bbb.org/us/nj/newark/profile/financial-services/the-credit-pros-0221-90055767/customer-reviews

[6] https://www.bbb.org/us/nj/newark/profile/financial-services/the-credit-pros-0221-90055767/complaints

[7] Id.

[8] https://us.shouldianswer.net/phone-number/7062003761

[9] Id.

5



24. In response to these calls, Plaintiff files this lawsuit seeking injunctive relief, requiring Defendant to stop making pre-recorded voice sales calls to consumers without their consent as well as an award of statutory damages to the members of the Class and costs.

## PLAINTIFF'S ALLEGATIONS

### Credit Pros Placed Pre-recorded Calls to the Plaintiff Without His Consent

25. In March 2021, the Plaintiff received multiple pre-recorded calls from the Defendant Credit Pros to his cell phone.

26. On March 4, 2021 at 10:01 AM, Plaintiff received a prerecorded call from 919-893-9954. The call began with a pre-recorded message designed to sound like a live agent. The agent was soliciting credit repair services.

27. On March 4, 2021 at 1:55 PM, Plaintiff received another prerecorded call from 919-893-9954 to his cell phone. This call also began with a pre-recorded message designed to sound like a live agent. The agent was soliciting credit repair services.

28. On March 5, 2021 the Plaintiff received two more calls to his cell phone from 919-893-9954. These calls were also prerecorded and soliciting him for credit repair services.

29. On March 8, 2021 at 12:07 PM, the Plaintiff received another prerecorded call from 919-893-9954 soliciting credit repair services. This time, the Plaintiff decided work his way through the automated questions and then to speak to a live agent so that he could identify the

---

[10] https://directory.youmail.com/directory/phone/3186671484

company that was calling him and ask them to stop, eventually being transferred to someone that identified himself as working for Credit Pros.

30. The Plaintiff does not have a relationship with Credit Pros, or any of its affiliated companies, nor has he ever consented to any contact from Defendant.

31. Simply put, Credit Pros did not obtain Plaintiff's prior express written consent to place any pre-recorded solicitation telephone calls to the Plaintiff.

32. Defendant's unauthorized telephone calls harmed Plaintiff in the form of annoyance, nuisance, and invasion of privacy, and disturbed Plaintiff's use and enjoyment of his phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone.

33. Seeking redress for these injuries, Honiball, on behalf of himself and Class of similarly situated individuals, brings suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits unsolicited pre-recorded solicitation calls to landline and cellular phone numbers.

## CLASS ALLEGATIONS

### Class Treatment Is Appropriate for Plaintiff's TCPA Claim

34. Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of himself and all others similarly situated and seeks certification of the following Class:

> **Pre-recorded No Consent Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant (or an agent acting on behalf of Defendant) called, (2) on the person's cellular telephone or residential landline, (3) using a pre-recorded voice, (4) for substantially the same reason Defendant called Plaintiff, and (5) for whom Defendant claims it obtained the person's telephone number in the same way it obtained the Plaintiff's telephone number.

35. The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, their subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released. Plaintiff anticipates the need to amend the Class definitions following appropriate discovery.

36. **Numerosity**: On information and belief, there are thousands of members of the Class such that joinder of all members is impracticable.

37. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

> (a) whether Defendant used a pre-recorded voice when placing calls to Plaintiff and the members of the Class;
>
> (b) whether Defendant placed pre-recorded voice calls to Plaintiff and members of the Class without first obtaining consent to make the calls;
>
> (c) whether Defendant's conduct constitutes a violation of the TCPA; and
>
> (d) whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

38. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in class actions. Plaintiff has no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting

8

this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff nor his counsel have any interest adverse to the Class.

39. **Appropriateness**: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Class uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Class as wholes, not on facts or law applicable only to Plaintiff. Additionally, the damages suffered by individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Class to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**FIRST CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violations of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Honiball and the Pre-Recorded No Consent Class)**

40. Plaintiff repeats and realleges paragraphs 1 through 39 of this Complaint and incorporates them by reference.

41. Defendant and/or its agents made unwanted solicitation telephone calls to Plaintiff and the other members of the Pre-Recorded No Consent Class using a pre-recorded voice.

42. These pre-recorded voice calls were made *en masse* without the consent of the Plaintiff and the other members of the Pre-Recorded No Consent Class.

43. Defendant has, therefore, violated 47 U.S.C. § 227(b)(1). As a result of Defendant's conduct, Plaintiff and the other members of the Pre-Recorded No Consent Class are each entitled to a minimum of $500 in damages for each violation, and up to $1,500 in damages for each violation in the event that the Court determines that Defendant's conduct was willful and knowing.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

a) An order certifying the Class as defined above; appointing Plaintiff as the representative of the Class; and appointing his attorneys as Class Counsel;

b) An award of actual and/or statutory damages for the benefit of Plaintiff and the Class;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Class; and

e) Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff requests a jury trial.

Respectfully Submitted,

**MICHAEL HONIBALL**, individually and on behalf of those similarly situated individuals

Dated: April 27, 2021

/s/ *Stefan Coleman*
Stefan Coleman
law@stefancoleman.com
LAW OFFICES OF STEFAN COLEMAN
1072 Madison Ave, Suite 1
Lakewood, NJ 08701
Telephone: (877) 333-9427

Facsimile: (888) 498-8946

*Attorneys for Plaintiff and the putative Class*